Good morning, Your Honors. John Affelt for the Plaintiff Appellants. The city reneged on its deal. That's what this case is about. They agreed to make all assistant inspector appointments I'm sorry, they agreed to fill all assistant inspector appointments with assistant inspector eligibles from an assistant inspector list. And in August 2007, they filled assistant inspector appointments with sergeant eligibles from a sergeant list. There couldn't be any more fundamental violation of what they had agreed to do. And we know what they were filling were assistant inspector appointments because the very plain language definition of an assistant inspector appointment is an appointment to an assistant inspector job. And their very plan of the city was to stop using, stop making assistant inspector appointments and to fill assistant inspector jobs with sergeants. Well, that violated their agreement to fill all assistant inspector jobs with appointments off the assistant inspector list. So we really think on a very plain language application of the stipulated order that the city violated it. What order do you think is so plain that it substantiates the arguments you just gave? The order, the stipulation in order where it says all additional appointments to assistant inspector will be made in this manner. And that's at Well, that's on Q35 order. That's right. Last line. All assistant inspector appointments will be made in the above manner. But I guess you're about the only one who is suggesting that that's appropriate for us to consider in this particular manner. Even if you went over to the administrative civil service commission rules, they don't suggest that the order and the determination order would suggest such. They think they have some rules of their own which may go to where you want to go. And they're not even sure about those. But they don't interpret that language in the same manner. The district court didn't interpret that language in the same manner. And now I have it in front of me. And you're saying that the language is so clear and unambiguous that I'm to interpret it in that manner. Is that what you're telling me? Yes, I am, Your Honor. Because an assistant inspector appointment, by definition, and this is right out of the civil service rules that we've cited. We're not about civil service rules here. We're about orders. I ask you, what order says that? If you're going to go to the civil service rules, then I guess I'm saying, okay, you've got a right of review under the civil service commission. Go see them. Do what you've got to do. In fact, you've filed such a case. The reason I'm pointing to the civil service rules is because I'm interpreting or I'm supplying the definition of what is a technical term within the four squares of this order. They're disputing what's, oh, we didn't make appointments. We made sergeant appointments. And I'm saying, no, you had, this is not a sergeant. Yes, I understand you appointed sergeants. But assign them duties which normally assistant inspectors do. And that makes it, means they are filling assistant inspector appointment slots. And again, where does the stipulation and order prohibit that? It's about appointments. Yes. And there is no appointment without filling a job. Right? That is key. They were appointed to the sergeant position. And they were assigned the duty of working in the investigations bureau or whatever it's called. Yes. They were assigned. They were not appointed to that position or to the assistant inspector position. They were appointed to assistant inspector positions. That is undisputed, Your Honor. Well, they were assigned to do the duties. An appointment is, by definition, an appointment made as a result of certification from an eligible list to a permanent position. The appointment is putting someone in a position that is aligned with a given rank. And because they are putting these individuals in assistant inspector positions, they are making assistant inspector appointments. That's the plain language argument. The second ---- I guess I'm having trouble reading the orders to give me the plain language, because the plain language of the orders doesn't say anything about that. You're suggesting that I have to get some parole evidence from someplace to try to suggest that the plain language of the orders suggests that. And all I'm saying is it doesn't seem to me that on this particular instance I need to go get parole evidence. I've got two orders directly in front of me. They are plain. They are unambiguous. And I am interpreting them the way the district court did and the way the Administrative Civil Service Commission did. And I'm saying, Your Honor, that this is not parole evidence. We're not going outside the four squares of the agreement. We're looking at the terms of the agreement. What did they agree to when they would say they would make all appointments off the Q35 list for Q35? They were saying we're going to fill all Q35 jobs off of this list. They were saying they were going to make appointments off that list. There's no such ---- I'm not saying, and we shall not ever assign anybody else to perform any of the duties normally performed by assistant inspectors, but for any reason. I mean, that's not in there. You have to agree. I agree that's not in there. I'm sorry. Let me ---- Go ahead. I agree that that is not in there explicitly, and that's where the district court erred. It doesn't have to be in there. They are prohibited by existing legal obligations from putting any other appointment into a Q35 position. Jump from the plain language of the stipulation in order to a package of external rules like the Civil Service Commission rules and whatever, right? In order to give it the meaning that you wish it to have. Well, first of all, I don't think you have to actually go there, but I think it's a secondary and independent point. I think saying you will make all appointments, Q35 appointments off a Q35 list, is saying you will fill all Q35 vacancies with Q35s. Because a vacancy in the rank is the same thing as a vacancy in a Q35 position. So I think that that's my plain language argument. Secondly, and independently, in fact, it is illegal. And everyone knew it would be illegal for them to put anyone else other than a Q35 appointment into a Q35 job. Well, but really what you're really arguing there, it seems to me, is an incorporation of existing laws in interpreting the contract itself. And I guess I'm having a second problem. If I'm giving the clear and unambiguous meaning to the words of the contract, at that point it seems to me that I have to do, I have to interpret it as to the law existing at the time, but not if there's more than one law upon which the party you want the contract pertained to has to comply with. So this party, the city, who you want this to apply to, the Civil Service Commission, what you're really suggesting, we've got one set of laws which is covered by the termination order Q35. They contracted to make that obligation. They've got other things they also need to do. But that doesn't necessarily say that because they've got other things they've got to do that that automatically applies to the interpretation of what the orders are. The orders speak for themselves. The fact that they've also got to comply with other rules under the Civil Service Commission just says there's other things they've also got to give thought to in doing what they do. But it doesn't say that I use that language in a clear and unambiguous agreement. And that's exactly what the Civil Service Commission said, which is looking at the same rules you now want me to apply to these orders. The Civil Service Commission was not interpreting this order, so let's be clear. Well, I understand that. The Civil Service Commission said even under their own rules they could not say what you're suggesting. They could only say they may have violated their rules, but they couldn't say that there couldn't be an assignment. That's what they said. Well, I guess I beg to differ. They agreed that the assignment of sergeants into these Q35 positions was a violation of the rules, of their rules. We have an issue with them. They ordered some decent prospective relief to what the city had to do to accomplish the plan that they wanted to do. We're not taking issue with that. What we take issue with is they did not actually do what they were required to do and take these people out of jobs. The reason I'm saying that is because they interpreted them exactly as I've suggested. Well, I guess they were interpreting civil service rules, we think, properly, and we've appealed that in state court. But the point here is we're sitting there in a room in 1998 writing this stipulation. No one would have dreamed that the city someday would come in and say, you know what, of course we reserve our right to break the law and put sergeants in these jobs if we want and make sergeant appointments instead of using this agreement. We would have said, well, if you want that, you've got to make, you know, and that's what the law says. You have to make that explicit. The burden was on them to reserve that right to make out-of-class assignments. The existing legal obligation to only fill vacancies in the Q35 group of positions, the Q35 rank, is incorporated into the contract, as if it's expressly set forth therein. That is the black letter law. We did not have to put that in. And let me also say, we are not opposed to the city proceeding with a plan to expand the duty of sergeants to include investigative duties as long as they are following the rules properly, because following the rules is the way to make their actions job-related and to tell the employees which list you need to be on to get which job and which promotional opportunity. The way to expand the duties, the Civil Service Commission decision says, is to, one, expand the class specifications of the sergeant, two, give a new test, the test eligibles, to make sure they can do those expanded duties. The city never expanded the class specifications before they implemented their plan. They never gave a new test that was part of their plan. Actually, if you look at ER 145, part of the plan was to give a hybrid test. They didn't do that. They just went ahead and appointed sergeants who had no ability or knowledge or demonstrated they could do investigative duties into Q35 positions. The plan was not to make Q35 appointments when they had agreed to make all Q35 appointments for all Q35 jobs. Yes, there is a fundamental conflict between what they agreed to do and what they did, and it's both in the plain language, in our view, and it's also in the incorporated legal obligations. Is the list still active? The list is not active at this point. Is it an issue in front of us now? It's not an issue, I think, and the city hasn't made noise about that. It is an issue, I think, in the State case to some extent. It may be an issue, let me put it this way, I think it may be an issue on how the district court judge would think about a remedy here should this court reverse and remand. My view is even if there's a new list that was instituted in 2010, that operates prospectively. These appointments were made in 2006, a year after they used the same list. I'm sorry, appointments were made in 2007, a year after they made appointments in 2007. To make these people whole in the equitable power of this court, this list needs to be used for those 33 positions. And if not, then you need to, you know, there needs to be monetary relief. Thank you, ma'am. All right. Thank you, Mr. Hamilton. Mr. Relnick. Good morning, Your Honors. My name is Jonathan Relnick. I'm a deputy city attorney. Let me ask you sort of a question that's just putting it in English and not in legalese. But in effect, what counsel is arguing is that the chief of police just made an in-run that was a little too cute by half around the obligation to take people off of an eligibility list for Q35 positions. And so the in-run being we're just going to call it an assignment and instead of an appointment. But what's really going on is that sergeants are just being put into positions ignoring the eligibility list and the procedures that were set out. What is your sort of just clear response to that? Well, I have a multifold response to that. You probably do, but just start with one that's persuasive. Well, one, over an 8-year period, the city appointed 229 officers off this list to assist an inspector. If they're appointed a million, that doesn't mean that they are not obliged to make all appointments to positions off the eligibility list for Q35 positions. And I'd like to direct your attention to the declaration of Chief Fong that's at the excerpts of record of 144 to 149. Look, I've read the record. What I want is your, if you would, humor me, just step back and tell me simply why the city wasn't making an in-run around the obligation and the consent decree to appoint, to fill positions in the investigative bureau off the Q35 eligibility list. Because the chief was reorganizing the department, wanted to have greater flexibility in staffing her department. That's a notable reason, but that doesn't explain why it wasn't an in-run around a legal obligation. It was not an in-run because these were appointments of sergeants to sergeants' positions. This is something that the Civil Service Commission made very clear in its decision. And, again, the chief was interested in having sergeants because that provided her with greater flexibility in how she staffed the department and her desire to get away from an environment in which we had a rank here. And, again, this is in her declaration of assistant inspector, inspector that was a dead end in the linear progression for all the other around as the needs of the city changed with respect to public protection. With sergeants who were trained to do both investigative duties as well as the supervisory functions of a sergeant out in field operations in a patrol setting, she could move those sergeants around from investigative duties to patrol duties and better utilize her resources, as well as have those sergeants as a resource for cross-training of other officers in the department at all ranks, and in particular, patrol officers, and thereby create a better work product for the department with respect to the investigations that it was doing. And so, again, there was no intent to circumvent the order. Again, my question isn't good motives, good policy, efficiency, or anything else. My question was just really simple, and that is why isn't, doesn't it run afoul of the clear language of the stipulation and order? Because the stipulation order only applies to appointments to a particular rank. And an opposing counsel is basically saying, look, you changed a word from appointments to assignments, but you didn't change the reality that the appointment was, that the action being taken was to fill a position. Well, the action being taken was to fill a position or a rank as a sergeant, and that somebody was assigned certain duties after that. And if we're talking about language, the language in the stipulation clearly and unmistakably talks about appointments. The matter there challenging really is assignments, and they went to the Civil Service Commission, and the Civil Service Commission was very clear in interpreting its rules that the term appointment and assignment were two different things, and that one's assignment, even if it ran afoul of the Civil Service rules, as it did here, did not affect the validity of the appointments of these sergeants to the rank of sergeant, and that they were valid. In fact, there was no challenge to the fact that these were valid sergeant appointments. So I think you need to look at the four corners of what was set forth in this order, and the principles essentially of federalism, that in remediating these kinds of cases into the consent decree, that district courts need to seek ways to minimize interference with legitimate state and local government concerns in how they operate their businesses, their operations. And that means, one, that we need to narrowly construe the stipulation to the four corners and not search for purposes of the stipulation, but see what the words say. Two, that it's incumbent upon a party who wants to refrain the other from engaging in certain activities or requiring them to take certain activities to specifically spell that out in the agreement and not look to do so by means after the fact of incorporation by reference or implied terms of the agreement. Otherwise, the district court then has no opportunity to determine whether the stipulation is, in fact, meeting that federalism concern of minimizing the impact on local government. And third, I would just say shortly that we shouldn't use the stipulation as a means of federalizing the city's civil service merit system, either in the context that a district court or this court should be looking at what the meaning of the civil service terms are and how they should be applied. That should be the province of the Civil Service Commission. And in a secondary form, the district court or this court shouldn't be sitting as the court of review for the civil service determination. The plaintiffs in this case went to the Civil Service Commission. They got a determination they didn't want. And by coming to this court, they're essentially asking for a do-over on that. At the same time, they pursued in the proper form a writ of mandate to determine whether or not the Civil Service Commission properly exercised its powers in that case. And the trial court denied their writ of mandate, and that's now on appeal. Before 2005 and the change, could sergeants do investigations? I hesitate, Your Honor. I'm trying to think about what's in the record with respect to that. I am, too, because I looked for it. And I don't know if it's in the record. I know that there were sergeants who were working in the Investigations Bureau doing investigations. I don't know if that is, in fact, in the record. I looked all over in the record to try to find the answer to that question, so I was trying to see if you could help. You know, the problem I have is similar to the one that Judge Reimer mentioned, is that you've got a whole program set out for how these particular inspections are going to be made. And you have that last phrase, all assistant inspector appointments will be made in the above manner from eligible lists. And it just seems that the whole purpose of this was that these functions would be performed by the assistant inspectors, and this is how they'd be chosen from that list. And it seems like kind of a crafty way to get around it. Well, in response, Your Honor, I would refer you to the U.S. v. Armour case, the Supreme Court case we cited in our brief, which makes clear that the court's not to search for the purpose of the stipulation. It's to look what's in the four corners of the document. And that stipulation in no way infringes on the chief's powers to decide how the department is organized, who should perform particular duties, what the staffing level should be in a particular bureau, or, frankly, the long-term viability of any particular rank within the department. And in the Armour case, which involved a consent decree in the meatpacking industry, the consent decree set forth various sorts of activities that the parties to that agreement, the meatpackers, should not participate in. One of them was in the retail grocery business. And it was very clear, thou shalt not engage in that. The case arose when one of the parties there, one of the defendants, sold assets to a company that was in the retail food business. And the court was very clear that there was nothing in the agreement that prohibited that sale or for that other party to acquire those assets and engage in those activities, meatpacking in relationship with retail grocery sales. And the court said if the government, which brought that case, had sought to create a structural barrier between meatpacking and retail groceries, then it was incumbent upon the government to put that into the agreement. And because it wasn't, we're not going to look for the purposes behind the consent decree and infer or imply that that's what was intended. And I think the same thing applies here. What was intended here can be read from the four corners of that stipulation, which was to appoint a minimum of 175 officers to the rank of assistant inspector in a particular fashion. And it's undisputed that the Department appointed far in excess of 175 officers over an eight-year period to the rank of assistant inspector, and they did so in the manner required by that stipulation. If there are no further questions. Anything else? Okay. Thank you, Mr. Rolnick. Just briefly, Your Honor, USVITT Continental Baking Company, which comes after Armour from the Supreme Court, makes clear that applying technical terms and definitions is totally within Armour's four-square agreement. And that's what we're doing here. How do you look at technical terms? Well, you look at the industry that uses them. You look at the civil service rules. This is unusual. You have the technical terms laid out in law. So this is not trying to get beyond and look into the purposes. And similarly, looking at existing legal obligations is also looking within the four squares of the agreement, because those are considered to be incorporated into the agreement. The main, I think, response that I heard to your question, Judge Reimer, about this end run is that these were appointments to sergeant positions. And that is wrong. That is absolutely wrong. The Civil Service Commission determined the appointment was for. I mean, that's undeniable. What you're basically saying is that was a subterfuge. Well, what I'm saying is the assignment produced filling a position. I mean, that's your position, isn't it? Well, my position is if they want to have appointed these people to sergeants and the purpose was yes. Well, they did appoint them to sergeants. They then assigned them to inspector duties. Right. Which, which. You're saying that that, if I understand you, you're saying that effectively filled those inspector positions with sergeant appointments. It improperly. Right. It violated the agreement because they were, yeah. So that's how we know that they were inspector appointments, because they were filling inspector jobs. Okay. But that's part of your position, and that's either right or wrong. Right. But it is a factual matter. I'm just saying I want to be clear that the record is clear that what they were filling, the Civil Service Commission found, were inspector jobs. They were traditionally, historically done by inspectors. Okay. You're way over time. Okay. So thank you very much for your argument, both of you. Thank you. And the matter just argued will be submitted.
judges: Hug, Rymer, Smith N. R.